# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWINA SMITH, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br> v. <br><br> CAMPBELL SOUP COMPANY, AND PLUM, PBC, <br><br> Defendants. | CASE NO.: 1:21-cv-8567 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Edwina Smith, on behalf of herself and all others similarly situated, by her undersigned attorneys, against Defendants, Campbell Soup Company (hereafter "Campbell") and Plum, PBC (hereafter "Plum"), alleges the following based upon personal knowledge as to herself and her own action, and, as to all other matters, allege, upon information and belief and investigation of her counsel, as follows:

### INTRODUCTION

1. This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the below-defined proposed Classes, all of whom purchased one or more baby foods manufactured by Defendants.[1]

---

[1] The purchased products include, but are not limited to: Plum Organics Stage 1 Just Peaches, Plum Organics Stage 1 Just Prunes, Plum Organics Stage 1 Just Sweet Potato, Plum Organics Stage 1 Just Mango, Plum Organics Super Puffs Variety Pack, Plum Organics Stage 2 Pear Purple Carrot & Blueberry, Plum Organics Stage 2 Pear Spinach and Pea, Plum Organics Stage 2 Banana Pumpkin, Plum Organics Stage 2 Grow Well DHA, Plum Organics Stage 2 Sweet Potato Apple & Corn, Plum Organics Stage 2 Banana Zucchini & Amaranth, Plum Organics Stage 2 Mango Sweet Potato Apple & Millet, Plum Organics Stage 2 Pumpkin Chickpea Spinach & Broccoli, Plum Organics Stage 2 Butternut Squash Carrot Chickpea & Corn, Plum Organics Stage 2 Apple Plum Berry Barley, Plum Organics Stage 2 Pear & Mango, Plum Organics Stage 2 Peach Pumpkin

2.  Campbell purchased Plum in 2013 for $249 million. At the time, Campbell touted Plum as the "No. 2 brand of organic baby food in the United States."[2] Plum represents its food philosophy as "Little ones deserve the very best food from the very first bite."[3] Plum prides itself for being on "Team Parent," noting on its website and advertisements, "Parenting is hard. That's why Plum is easy."[4]

3.  Defendants do not list heavy metals as an ingredient on the Products' label nor do they warn of the potential presence of heavy metals in their Products.

4.  Unbeknownst to Plaintiff and members of the proposed Classes, and contrary to the representations on the Products' label, the Products contain toxic heavy metals, which, if disclosed to Plaintiff and members of the proposed Classes prior to purchase, would have caused Plaintiff and members of the proposed Classes not to purchase or consume the Products.

5.  As a result, the Products' labeling is deceptive and misleading.

6.  Plaintiff and the members of the proposed Classes, as defined below, thus bring claims for consumer fraud and seek damages, injunctive and declaratory relief, interest, costs, and attorneys' fees.

---

Carrot & Cinnamon, Plum Organics Stage 2 Mango Yellow Zucchini Corn & Turmeric, Plum Organics Mighty 4 Guava Banana Black Bean Carrot Oat, Plum Organics Mighty 4 Pear Cherry Blackberry Strawberry Black Bean Spinach Oat, Plum Organics Mighty Veggie Zucchini Apple Watermelon Barley, Plum Organics Mighty Veggie Spinach Grape Apple Amaranth, Plum Organics Mighty Veggie Carrot Pear Pomegranate Oat, Plum Organics Mighty Morning Banana Blueberry Oat Quinoa, Plum Organics Mighty Protein & Fiber Pear White Bean Blueberry Date & Chia, Plum Organics Mighty Protein & Fiber Mango Banana White Bean Sunflower Seed Butter & Chia, and Plum Organics Mighty Protein & Fiber Banana White Beat Strawberry Chia (the "Products").

[2] *See* https://www.campbellsoupcompany.com/newsroom/press-releases/campbell-completes-acquisition-of-plum-organics/ (last accessed February 10, 2021).
[3] *See* https://www.plumorganics.com/food-philosophy/ (last accessed February 10, 2021).
[4] *See* https://www.plumorganics.com/video-category/parenting-is-hard/#videos (last accessed February 10, 2021).

## THE PARTIES

7. Plaintiff, Edwina Smith is a citizen of the State of New Jersey and is a member of the proposed Classes defined herein. She purchased many of the listed Products from Walmart and CVS between July, 2019 and February, 2021 including, but not limited to Plum Organics Stage 2 Pear Purple Carrot & Blueberry, Plum Organics Stage 2 Pear Spinach and Pea, Plum Organics Stage 2 Banana Pumpkin, Plum Organics Stage 2 Sweet Potato Apple & Corn, Plum Organics Stage 2 Banana Zucchini & Amaranth, Plum Organics Stage 2 Mango Sweet Potato Apple & Millet, Plum Organics Stage 2 Pumpkin Chickpea Spinach & Broccoli, Plum Organics Stage 2 Butternut Squash Carrot Chickpea & Corn, Plum Organics Stage 2 Apple Plum Berry Barley, Plum Organics Stage 2 Pear & Mango, Plum Organics Stage 2 Peach Pumpkin Carrot & Cinnamon, Plum Organics Stage 2 Mango Yellow Zucchini Corn & Turmeric.

8. Defendant, Campbell Soup Company, is a New Jersey corporation with its headquarters located in Camden, New Jersey.

9. Defendant, Plum, PBC, is a Delaware corporation with its headquarters located in San Francisco, California.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the claims of the members of the proposed Classes exceed $5,000,000 and because Defendants are citizens of a different state than most members of the proposed Classes.

11. This Court has personal jurisdiction over Defendants because Defendants regularly sell and market products and conduct business in this District and/or under the stream of commerce doctrine by allowing products to be sold in this District, including the Products.

12. Venue is proper in this Court because a substantial portion of the events complained of herein took place in this District, and this Court has jurisdiction over the Defendants. Furthermore, Defendant, Campbell, is incorporated and headquartered in this District.

## FACTUAL ALLEGATIONS

13. Defendants manufacture, distribute, promote, offer for sale, and sell the Products, both in the past and currently. Defendants have advertised and continue to advertise the Products through television commercials, print advertisements, point-of-sale displays, product packaging, Internet advertisements, and other promotional materials.

14. An investigation by the U.S. House of Representatives Subcommittee on Economic and Consumer Policy (hereafter the "Subcommittee") revealed that baby foods manufactured by defendants are "tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."[5]

15. Exposure to heavy metals causes permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior in children. Toxic heavy metals endanger infant neurological development and long-term brain function. Lead and arsenic are heavy metals known to cause a wide spectrum of adverse outcomes in pregnancy such as abortions, retarded growth at the intrauterine cavity, skeletal deformities, malformations and retarded development especially of the nervous system.[6]

16. Defendants refused invitations to cooperate with the Subcommittee, leading the Subcommittee to state it is "greatly concerned that [Defendants'] lack of cooperation might be

---

[5] U.S. House of Representatives Subcommittee on Economic and Consumer Policy, Staff Report, "Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury (Feb. 4, 2021).
[6] *Id.*

obscuring the presence of even higher levels of toxic heavy metals in their baby food products than their competitors' products." Defendants additionally refused to produce to the Subcommittee their testing standards or any specific test results regarding the presence of toxic heavy metals. Rather, Defendants provided a spreadsheet "self-declaring" that their baby food meets unspecified criteria for toxic heavy metals.[7]

17. Defendants' produced a spreadsheet, which declares that their baby food met the criteria for mercury, which notes with asterisks that for mercury: "[n]o specific threshold established because no high-risk ingredients are used." The Subcommittee found this note disturbing, stating "[t]his misleading framing—of meeting criteria that do not exist—raises questions about what [Defendants'] other thresholds actually are, and whether they exist."[8]

18. The Subcommittee notes that Defendants' "evasion is concerning, as even limited independent testing has revealed the presence of toxic heavy metals in their baby food."

19. Young children are particularly vulnerable to lead because the physical and behavioral effects of lead occur at lower exposure levels in children than in adults. A dose of lead that would have little effect on an adult can have a significant effect on a child. In children, low levels of exposure have been linked to damage to the central and peripheral nervous system, learning disabilities, shorter stature, impaired hearing, and impaired formation and function of blood cells.[9]

---

[7] *Id.*
[8] *Id.*
[9] *See* https://www.cdc.gov/nceh/lead/prevention/pregnant.htm.

20. EPA has set the maximum contaminant level goal for lead in drinking water at zero because lead is a toxic metal that can be harmful to human health even at low exposure levels. Lead is persistent, and it can bioaccumulate in the body over time.[10]

21. The Agency for Toxic Substances and Disease Registry states that there may be no threshold for lead with regards to developmental impact on children. "In other words there are no safe limits for [lead]."[11]

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the following proposed Class: All persons within the United States who purchased and consumed the Products from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").

23. Plaintiff also seeks certification of the following subclass (the "New Jersey Class"): All persons in the State of New Jersey who purchased and consumed the Products from the beginning of any applicable limitations period through the date of class certification.

24. Excluded from the proposed Classes are the Defendants, and any entities in which the Defendants have controlling interest, the Defendants' agents, employees and their legal representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiff's counsel, their staff members, and their immediate family.

---

[10] *See* https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water.

[11] G. Schwalfenberg, I. Rodushkinb, S.J. Genuis, "Heavy metal contamination of prenatal vitamins," Toxicology Reports 5 at 392 (2018).

25. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

26. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands to tens of thousands. The number of members in the Classes is presently unknown to Plaintiff but may be verified by Defendants' records. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

27. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes. Such common questions of law or fact include, but are not limited to, the following:

   a. Whether the Products contain dangerous levels of heavy metals;
   b. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;
   c. Whether Defendants' actions violate the state consumer fraud statutes invoked below;
   d. Whether Defendants' actions constitute common law fraud;
   e. Whether Plaintiff and Members of the Classes were damaged by Defendants' conduct;
   f. Whether Defendants were unjustly enriched at the expense of Plaintiff and Class Members; and

  g. Whether Plaintiff and Class Members are entitled to injunctive relief.

28. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** The claims of the named Plaintiff are typical of the claims of other Members of the Classes. All Members of the Classes were comparably injured by Defendants' conduct described above, and there are no defenses available to Defendants that are unique to Plaintiff or any particular members of the Classes.

29. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of other Members of the Classes; she has retained class counsel competent to prosecute class actions and financially able to represent the Classes.

30. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Members of the Classes as a whole. In particular, Plaintiff seeks to certify the Classes to enjoin Defendants from selling or otherwise distributing baby foods until such time that Defendants can demonstrate to the Court's satisfaction that their baby foods are accurately labeled.

31. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other means of adjudication for this controversy. It would be impracticable for Members of the Classes to individually litigate their own claims against Defendants because the damages suffered by Plaintiff and the Members of the Classes are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means

for adjudication with fewer management difficulties and comprehensive supervision by a single court.

## CAUSES OF ACTION
## COUNT I

**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**
**N.J. Stat. Ann. §§ 56:8-1,** *et seq.*
**(*On Behalf of the New Jersey Class*)**

32. Plaintiff, individually and on behalf of the New Jersey Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

33. Plaintiff brings this claim on behalf of herself and the New Jersey Class for violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann §§ 56:8-1, *et seq.*

34. Defendants are "persons," as defined by N.J. Stat. Ann. § 56:8-1(d).

35. Defendants sell "merchandise," as defined by N.J. Stat. Ann. § 56:8-1(c) and (e).

36. The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.*, prohibit unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, as well as the knowing concealment, suppression, or omission of any material fact with the intent that others rely on the concealment, omission, or fact, in connection with the sale or advertisement of any merchandise.

37. As described herein, Defendants repeatedly advertised, both on the Products labels and on their websites, through a national advertising campaign, among other items, that the Products are safe, healthy and fit for consumption by infants and children.

38. Contrary to these representations, the Products do not have safe levels of heavy metals, and do not contain safe and healthy food and beverages as described on the labels or in Defendants' uniform marketing and advertising campaigns. Rather, the Products are unsafe because they contain toxic and/or dangerous levels of heavy metals with the propensity to cause

adverse health implications, rendering the Products unsafe and unsuitable for consumer use as marketed by Defendants.

39. Defendants maintained exclusive knowledge of material facts concerning the unsafe nature of the Products and the levels of unsafe heavy metals included therein, including that the Products had the propensity to cause adverse health implications.

40. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

41. As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff and New Jersey Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

42. Plaintiff and New Jersey Class members seek all monetary and non-monetary relief allowed by law, including injunctive relief, other equitable relief, actual damages, treble damages, restitution, and attorneys' fees, filing fees, and costs.

## COUNT II

### BREACH OF EXPRESS WARRANTY
*(On Behalf of the New Jersey Class)*

43. Plaintiff, individually and on behalf of the New Jersey Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

44. Plaintiff brings this claim on behalf of herself and on behalf of the New Jersey Class.

45. Express warranties by sellers of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and becomes the basis of the bargain. Such warranties can also be created based upon descriptions of the goods

which are made as part of the basis of the bargain that the goods shall conform to the description. *See, e.g.*, N.J. Stat. Ann. § 12A:2A-210(1)(a)-(b).

46. Plaintiff formed a contract with the Defendants at the time she purchased the Products. The terms of that contract included the promises and affirmations of fact that Defendants makes through their product labels and other forms of uniform, nationwide marketing, on its product labels, website, and social media. Among other affirmations of fact and promises described herein, Defendants represented that the Products are safe, healthy, and appropriate for infant or child consumption.

47. These affirmations of facts and promises, which are part of Defendants' uniform marketing, advertising, and product labeling, constitute express warranties and became part of the basis of the bargain, and they are part of the standardized contracts between Plaintiff and members of the New Jersey class, and the Defendants, on the other.

48. Contrary to these affirmations of fact and promises, the Products do not contain food or beverages that are safe, healthy, and appropriate for infant or child consumption as described on the Product labels or in Defendants' uniform marketing and advertising campaign. Defendants breached the express warranties and/or contract obligations by placing these products into the stream of commerce and selling them to consumers, when they have dangerous and/or toxic levels of heavy metals, and can cause toxicity or adverse health implications, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Defendants. These high levels of heavy metals substantially impair the use, value, and safety of the Products.

49. At all times relevant herein, Defendants were aware, or should have been aware, of the toxic or dangerous levels of heavy metals in the Products. Defendants were on notice of

these concerns with their products, but nowhere on the package labeling or on Defendants' websites or other marketing materials did Defendants warn Plaintiff and members of the New Jersey Class that they were at risk of feeding their children food and/or beverages with toxic or dangerous levels of heavy metals.

50. Instead, Defendants concealed the high levels of heavy metals contained in their The Products and deceptively represented that these products were safe, healthy, and appropriate for infant or child consumption. Defendant, thus, utterly failed to ensure that the material representations it was making to consumers were true.

51. The toxic and/or dangerous levels of heavy metals at issue in the Products existed when they left Defendants' possession or control and were sold to Plaintiff and members of the New Jersey Class. The levels of heavy metals contained in the Products were undiscoverable by Plaintiff and members of the New Jersey Class at the time of purchase of the Products.

52. As manufacturers, marketers, advertisers, distributors and sellers of the Products, Defendants were parties with exclusive knowledge and notice of the fact that these products did not conform to the affirmations of fact and promises.

53. In addition, or in the alternative, to the formation of an express contract, Defendants made each of the above-described representations to induce Plaintiff and members of the New Jersey Class to rely on such representations.

54. Defendants' affirmations of fact and promises were material, and Plaintiff and the New Jersey Class members reasonably relied upon such representations in purchasing the Products.

55. All conditions precedent to Defendants' liability for its breach of express warranty have been performed by Plaintiff or New Jersey Class members.

56. Affording Defendants an opportunity to cure their breaches of written warranties would be unnecessary and futile here. Defendants were placed on reasonable notice of the levels of heavy metals in their The Products and breach of the warranties based their scientific research and expertise in the food production industry. Defendants have had ample opportunity to cure the high level of heavy metal in their The Products for safe and healthy consumption by Plaintiff and members of the New Jersey Class and their children, but have failed to do so.

57. Defendants have also had notice of their breach as set forth herein by virtue of the recent Congressional investigation into this matter.

58. As a direct and proximate result of Defendants' breaches of express warranty, Plaintiff and members of the New Jersey Class have been damaged because they did not receive the products as specifically warranted by Defendants. Plaintiff and members of the New Jersey Class did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment of the Products.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
*(On Behalf of the New Jersey Class)*

59. Plaintiff, individually and on behalf of the members of the New Jersey Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

60. Plaintiff brings this claim on behalf of herself and the New Jersey Class.

61. New Jersey has adopted UCC § 2-314, which states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *See e.g.* N.J. Stat. Ann. § 12A:2-314.

62. Defendants are and were at all relevant times merchants as defined by the relevant statute.

63. The Products sold to Plaintiff and members of the New Jersey Class are goods as defined by the relevant statute.

64. Defendants sold, and Plaintiff and members of the New Jersey Class purchased the Products from authorized resellers of Defendants' products.

65. By placing such products into the stream of commerce, Defendants impliedly warranted to Plaintiff and members of the New Jersey Class that the Products were of merchantable quality (i.e., a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

66. The Products when sold and at all times thereafter were not merchantable or reasonably fit for either the use they were intended or the uses reasonably foreseeable by Defendants.

67. Defendants breached the implied warranty of merchantability because the Products suffer from an unsafe level of toxic and/or dangerous amount of heavy metals that have the propensity to cause health complications, rendering them unfit for their intended use and purpose as baby and/or children food and beverages. The level of heavy metals substantially impairs the use, value, and safety of these products.

68. The unsafe toxic and/or dangerous levels of heavy metals existed when the Products left Defendants' possession or control and were sold to Plaintiff and members of the New Jersey Class. The amounts of heavy metals contained in the Products were undiscoverable by Plaintiff and members of the New Jersey Class at the time of their purchase of the Products.

69. As described herein, Defendants repeatedly advertised, both on the Products' labels and on its website, through a national advertising campaign, among other items, that the Products are safe and appropriate for infant and child consumption.

70. Contrary to these representations, the Products do not have safe levels of heavy metals as generally indicated on the Products' labels and in Defendants' uniform marketing and advertising campaigns. Rather, the Products are unsafe because they have toxic and/or dangerous levels of heavy metals contained in their food or beverages with the propensity to cause adverse health implications. The Products are thus unsafe and unsuitable for consumer use as marketed by Defendants.

71. Defendants have exclusive knowledge of material facts concerning the defective nature of the Products, including that they had the propensity to cause, and had caused these adverse reactions.

72. Plaintiff and members of the New Jersey Class, at all relevant times, were intended third-party beneficiaries of Defendants and its agents in the distribution and sale of the Products. Moreover, Defendants exercised substantial control over which outlets can carry and sell the Products, which are the same places that Plaintiff and the members of the New Jersey Class purchased them. In addition, Defendants' warranties are in no way designed to apply to the distributors that purchase these products in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who ultimately review the labels prior to making their purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumers who purchase the Products.

73. Plaintiff and members of the New Jersey Class sustained damages as a direct and proximate result of Defendants' breaches in that they paid a premium for the Products that they

would not have otherwise paid. Plaintiff and members of the New Jersey Class also did not receive the value of the product they paid for—the products are worthless or worth far less than Defendants represent due to the existence of unsafe levels of heavy metals contained therein.

74. Plaintiff and members of the New Jersey Class have sustained, are sustaining, and will sustain damages if Defendants continue to engage in such deceptive, unfair, and unreasonable practices.

75. Defendants were placed on reasonable notice of the high levels of heavy metals contained in the Products and breach of the warranties based on their own research into food processing and sourcing, as well as a recent Congressional investigation on the matter, and have had ample opportunity to cure the inappropriate levels of metals for Plaintiff and members of the New Jersey Class, but have failed to do so. Instead, Defendants have doubled down on its efforts to convince consumers of the products' safe and healthy, including public statements denying that there are any issues with the products.

76. As a result of the breach of the implied warranty of merchantability, Plaintiff and members of the New Jersey Class are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

### COUNT IV

**UNJUST ENRICHMENT**
**(On Behalf of the National Class)**

77. Plaintiff, individually and on behalf of the National Class, repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

78. Plaintiff and the putative Class Members conferred a benefit on Defendants when they purchased the Products, of which Defendants had knowledge. By their wrongful acts and

16

omissions described herein, including selling the Products, which contain heavy metals, including arsenic, mercury, cadmium, and lead at levels above what is considered safe for babies, Defendants were unjustly enriched at the expense of Plaintiff and the putative Class Members. Plaintiff's detriment and Defendants' enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

79. Defendants have profited from their unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and the putative Class Members under circumstances in which it would be unjust for Defendants to be permitted to retain the benefit. It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Products.

80. Defendants have been unjustly enriched in retaining the revenues derived from the proposed Class members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendants manufactured defective Products, and misrepresented the nature of the Products, misrepresented their ingredients, and knowingly marketed and promoted dangerous and defective Products, which caused injuries to Plaintiff and members of the proposed Class because they would not have purchased the Products based on the same representations if the true facts concerning the Products had been known.

81. Plaintiff and the putative Class members have been damaged as a direct and proximate result of Defendants' unjust enrichment because they would not have purchased the Products on the same terms or for the same price had they known the true nature of the Products and the misstatements regarding what the Products were and what they contained.

82. Defendants either knew or should have known that payments rendered by Plaintiff and the putative Class members were given and received with the expectation that the Products

were produced in accordance with the stated food philosophy, "Little ones deserve the very best food from the very first bite," as represented by Defendants. It is inequitable for Defendants to retain the benefit of payments under these circumstances.

83. Plaintiff and the putative Class members are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants.

84. When required, Plaintiff and the putative Class members are in privity with Defendants because Defendants' sale of the Products was either direct or through authorized sellers. Purchasing through authorized sellers is sufficient to create such privity because such authorized sellers are Defendants' agents for the purpose of the sale of the Products.

85. As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiff and the putative Class members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A. Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

B. Ordering Defendants to pay actual damages to Plaintiff and the other members of the Classes;

C. Ordering Defendants to pay restitution to Plaintiff and the other members of the Classes;

D. Ordering Defendants to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Classes;

E. Ordering Defendants to pay statutory damages, as provided by the applicable state consumer protection statutes invoked herein, to Plaintiff and the other members of the Classes;

F. Ordering Defendants to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other members of the Classes, as allowable by law;

G. Ordering Defendants to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

H. Ordering such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated:  April 7, 2021                          Respectfully submitted,

*/s/ Gary S. Graifman*
Gary S. Graifman
Melissa R. Emert*
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
135 Chestnut Ridge Road
Montvale, NJ 07645
Tel: (845) 356-2570
Fax: (845) 356-4335
ggraifman@kgglaw.com
memert@kgglaw.com

*pro hac vice to be filed*

*Attorneys for the Plaintiff and the Putative Classes*